# IN THE COURT OF APPEALS OF IOWA

No. 18-1470
Filed March 20, 2019

IN THE INTEREST OF A.G.,
Minor Child,

B.G., Father,
          Appellant.

_____

Appeal from the Iowa District Court for Decatur County, Monty Franklin, District Associate Judge.

A father appeals the termination of his parental rights to his child. **REVERSED AND REMANDED.**

Jenna K. Lain of The Law Office of Jenna K. Lain, PLLC, Corydon, for appellant father.

Thomas J. Miller, Attorney General, and Mary A. Triick, Assistant Attorney General, for appellee State.

Bryan J. Tingle of Tingle Law Office, Des Moines, attorney and guardian ad litem for minor child.

Considered by Vogel, C.J., and Vaitheswaran and Doyle, JJ.

**VAITHESWARAN, Judge.**

A father appeals the termination of his parental rights to his child, born in 2015. He contends (1) the State failed to prove the ground for termination cited by the district court and (2) termination is not in the child's best interests. We find the first issue dispositive.

## I.   *Background Facts and Proceedings*

The child came to the attention of the department of human services in early 2017 on information that the mother was using methamphetamine while caring for her. The father also admitted to illicit drug use. The district court ordered the child removed from the parents' care and later adjudicated her in need of assistance. The child was placed with the father's sister.

The department afforded the father supervised visits with the child twice each week. According to the department social worker assigned to the case, his participation was initially "inconsistent," but within two months of the child's removal, his attendance became "more regular."

The department recommended that the father "complete[] a substance abuse and a mental health evaluation and follow[] all recommendations, including drug testing." Again, the father was slow to comply but, within five months of the child's removal, the department reported he had scheduled a substance-abuse evaluation. The department also reported the father's participation in visits and services had "increased and been more consistent over time" and he "appear[ed] to be bonded" with his child.

The father completed a substance-abuse evaluation in short order, which culminated in a recommendation "that he attend [a] Substance Abuse Extended

Outpatient Program." The father agreed to do so. He initially tested negative for all substances, later had two positive tests for benzodiazepines, and finally tested negative for all tested substances.

Shortly thereafter, the district court granted the father six additional months to work toward reunification. The court conditioned reunification on "consistent participation" in services and "continued participation . . . with mental health and substance abuse treatment and continued participation in visits." The court also ordered the parents to "abstain from the use of all mind altering substances."

In time, the department reported that the father secured employment, attended visits that did not interfere with his work schedule, and saw his therapist and substance-abuse counselor "on a consistent basis." Nonetheless, the department recommended changing the permanency goal from reunification to termination of parental rights on the ground the father had "not fully engaged in services or showed any consistency or desire to have [the child] returned to his care." The department also noted the father's sister could no longer care for the child on a long-term basis, requiring the child's transfer to foster care.

Less than one month after the department filed this report, the father's substance-abuse counselor reported that the father "completed his treatment goals" and met the requirements "for a successful discharge" from the outpatient program. The counselor stated the father's previous two drug tests "were negative for all tested substances" and the father elected to "attend[] outpatient sessions on a voluntary basis to continue working on relapse prevention."

Despite this progress, the department persisted in its recommendation of termination, expressing concern about two missed mental-health appointments,

loss of employment, and apparent cancellation of certain supervised visits. The district court ruled it was "no longer confident that reunification could occur" because the father "has not been consistent and committed with mental health treatment, substance abuse treatment, or visitations with the child." The court changed the permanency goal from reunification to termination of parental rights and ordered visits with the child to remain supervised. At the same time, the court stated, "[I]f the parents commit to services, the department" could ask for reconsideration "and move towards semi-supervised or unsupervised visits."

The State filed a petition to terminate parental rights. Following a termination hearing that spanned two days over a two-month period, the district court granted the petition. The father appealed.[1]

## II.    Ground for Termination

The district court terminated the father's parental rights pursuant to Iowa Code section 232.116(1)(h) (2018), which requires proof of several elements, including proof by clear and convincing evidence that the child cannot be returned to the parent's custody. On our de novo review, we are not persuaded the State proved this element.

The father was afforded six additional months to work toward reunification. During that period, he successfully completed outpatient substance-abuse treatment, agreed to continue in the program on a voluntary basis, participated in six of eight mental-health sessions during an eleven-week period, secured other employment, and attended supervised visits with the child.

---

[1] The mother's parental rights were also terminated. She did not appeal.

At the termination hearings, the department caseworker conceded she had "no concerns that [the father was] using illegal substances." Although she stated he made insufficient progress in his mental-health treatment, she acknowledged he reengaged in mental-health services during the last three months of the six-month extension period. She testified, "Through those three months, his attendance was consistent for the most part."

The father's mental-health counselor confirmed his attendance at three-fourths of the scheduled sessions and stated he was unaware "of any anger difficulties experienced by" the father since he reengaged in services three months earlier. The counselor also stated he observed "no indications that [the father] would be a danger to his daughter if he should receive custody of his daughter."

As for visits with the child, the caseworker acknowledged the father was forced to cancel one because of work orientation and another because it was his first day at a new job. She also conceded one of the visits reported to have been missed was in fact canceled by the service provider. Finally, she agreed the father contacted her about rescheduling visits and about seeking accommodation of his four-day-on-four-day-off work schedule. She stated the service provider could not facilitate weekend visits and notice was too short to accommodate other requests. She did not explain why the department failed to adjust future visits after learning of the work schedule.

Despite the father's significant progress on all fronts, the department caseworker testified the father had not shown he could be a "committed and capable" caretaker. On our de novo review, we are convinced he was not afforded the opportunity. As the father testified, "I have done what they wanted me to. I did

drag my feet a little bit in the beginning, took a backseat . . . and I regret that.  I'm working on it."

We conclude the State failed to prove the child could not be returned to the father's custody.  We reverse the order terminating the father's parental rights to the child and remand for the entry of an order dismissing the termination petition as to him.

**REVERSED AND REMANDED.**